# GREENE *v.* MASSEY, CORRECTIONAL SUPERINTENDENT

No. 76–6617.   Argued November 28, 1977—Decided June 14, 1978

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, POWELL, and STEVENS, JJ., joined.  POWELL,

J., filed a concurring opinion, *post,* p. 27. REHNQUIST, J., filed an opinion concurring in the judgment, *post,* p. 27. BLACKMUN, J., took no part in the consideration or decision of the case.

*John T. Chandler* argued the cause for petitioner *pro hac vice.* With him on the briefs was *Donald C. Peters.*

*Harry M. Hipler,* Assistant Attorney General of Florida, argued the cause for respondent *pro hac vice.* With him on the brief were *Robert L. Shevin,* Attorney General, and *Basil S. Diamond,* Assistant Attorney General.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a State may retry a defendant after his conviction has been reversed by an appellate court on the ground that the evidence introduced at the prior trial was insufficient, as a matter of law, to sustain the jury's verdict.

I

On September 7, 1965, petitioner Greene and José Manuel Sosa were indicted by a Florida grand jury for the murder of Nicanor Martinez. The indictment charged that Sosa "did hire, procure, aid, abet and counsel" Greene to murder Martinez and that petitioner had carried out the premeditated plan, shooting the victim to death with a pistol. A state-court jury subsequently found the defendants guilty of first-degree murder, without a recommendation of mercy. Pursuant to Florida law at the time, the trial court sentenced both defendants to death.

On appeal to the Florida Supreme Court, the convictions of Greene and Sosa were reversed and new trials ordered. The reviewing court was sharply divided, however, with a majority composed of four justices joining a brief *per curiam* opinion which disposed of the case in the following terms:

"After a careful review of the voluminous evidence here *we* are of the view *that the evidence was definitely lacking*

*in establishing beyond a reasonable doubt that the defendants committed murder in the first degree, and that the interests of justice require a new trial. The judgments are accordingly reversed and remanded for a new trial."* Sosa v. State, 215 So. 2d 736, 737 (1968). (Emphasis added.)

Three justices dissented without opinion; we can do no more than speculate that the dissenting justices concluded there was sufficient evidence to support the jury verdict. In addition, a separate "special concurrence" was filed on behalf of three of the four justices who had also joined the *per curiam* opinion remanding for a new trial. These three concurring justices undertook a detailed examination of various asserted trial errors and found that on at least one claim the trial court had committed reversible error.[1] This point concerned the improper admission of certain hearsay evidence which, in the opinion of the concurring justices, had a "potential probative force" that could have been "highly incriminating or critical to the establishment of an ultimate fact in dispute." *Id.*, at 745. While the concurrence of the three justices makes no mention of evidentiary insufficiency as such, the opinion concludes:

> "For the reasons stated the judgments should be reversed and remanded for a new trial so we have agreed to the Per Curiam order doing so." *Id.*, at 746.

The "reasons stated" by the concurring justices thus concerned *trial error,* but paradoxically, the three explicitly joined the court's *per curiam* opinion which rested exclusively on the

---

[1] The concurrence also concluded that the trial court had improperly ruled on a question concerning a subpoena *duces tecum,* the result of which was that the defense may have been deprived of evidence to which it was entitled. It is not clear from the opinion whether the concurring justices would have regarded this error, in and of itself, as requiring reversal.

ground that the evidence was insufficient to support the verdict.

The case was then remanded, and after some intervening procedural maneuvering, the defendants were ordered retried in the Circuit Court of Orange County, Fla. Prior to their second trial, however, the defendants filed a suggestion for a writ of prohibition, claiming that their retrial would violate the Double Jeopardy Clause of the Federal Constitution, as it was applied to the States by *Benton* v. *Maryland,* 395 U. S. 784 (1969). They contended that the *per curiam* opinion of the State Supreme Court was tantamount to a finding that the trial court should have directed a verdict of not guilty and hence a second trial for first-degree murder would constitute double jeopardy. When the trial court refused to issue the writ, review was sought in the Second District Court of Appeal of Florida. That court likewise declined to issue a writ of prohibition, but expressly stated that it was not rendering "an opinion as to the propriety of a new trial after a reversal for lack of sufficient evidence to establish, as a matter of law, the essential elements of the crime charged." *Sosa* v. *Maxwell,* 234 So. 2d 690, 692 (1970). Rather, the District Court of Appeal was of the view that the Supreme Court's reversal "appear[ed] to be based on a finding that the evidence, though technically sufficient, [was] so tenuous as to prompt an appellate court to exercise its discretion and, in the interest of justice, grant a new trial." *Id.,* at 691.[2] Considering the case

---

[2] The District Court of Appeal noted that "on many occasions" Florida courts had "held that where the weight of evidence appears . . . to be very weak, although apparently legally sufficient if all permissible inferences are made and certain witnesses believed or disbelieved, a new trial may be granted." 234 So. 2d, at 691. That court construed the language in the *per curiam* opinion of the State Supreme Court "as indicating that although some evidence on all elements of the crime was present, a grave doubt that affirmance would be in the interests of justice was raised in the minds of those members of the supreme court joining in the per curiam decision." *Id.,* at 691 n. 1.

in this posture, the court indicated that it could find no precedent in Florida law which would bar a retrial on double jeopardy grounds.[3] Certiorari was subsequently sought in the Supreme Court of Florida, which denied the petition without comment. 240 So. 2d 640 (1970).

Greene and Sosa were then retried. On January 15, 1972, they were convicted of first-degree murder and each received a life sentence, the second jury having recommended mercy. From this judgment they appealed to the Fourth District Court of Appeal of Florida, raising again their contention that the second trial violated the Double Jeopardy Clause. While conceding "the point to be academically intriguing," *Greene* v. *State,* 302 So. 2d 202, 203 (1974), that court refused to reach the merits of the double jeopardy claim, holding instead that the Court of Appeal's earlier disposition of the issue was *res judicata.* Greene and Sosa applied for a writ of certiorari in this Court and certiorari was denied. *Greene* v. *Florida,* 421 U. S. 932 (1975).

Having exhausted all avenues of direct relief, petitioner Greene[4] applied for a writ of habeas corpus in the United States District Court, arguing once more that his second trial was held in violation of the Double Jeopardy Clause. Although the District Court was sympathetic to petitioner's claim,[5] it felt constrained by prior Fifth Circuit precedent to

---

[3] Although the District Court of Appeal thus failed to decide whether the State might retry a defendant after his conviction has been reversed on the ground that the evidence was insufficient to support the verdict, it did opine in dictum that in such circumstances "the trial judge should have directed a verdict of acquittal." *Id.,* at 692.

[4] Sosa was not a party to the federal habeas corpus action; accordingly, our holding here has no effect on his conviction.

[5] In its unreported order dismissing the petition, the District Court stated that "if this were a question of first impression in the Fifth Circuit, this Court might be inclined to grant the petition. Regardless of whether an appellate court or a trial jury makes the determination that the evidence is insufficient to sustain a finding of guilt as to a particular charge,

dismiss the petition. From this ruling petitioner appealed to the Court of Appeals, which affirmed the District Court on the basis of an earlier Fifth Circuit case, *United States* v. *Musquiz,* 445 F. 2d 963 (1971). 546 F. 2d 51 (1977). The *Musquiz* decision had interpreted several of this Court's cases [6] to mean that under 28 U. S. C. § 2106, a court of appeals could order a new trial after a conviction had been reversed due to evidentiary insufficiency *"if* a motion for a new trial was made in the trial court." 546 F. 2d, at 56. Noting that Greene had made a motion for a new trial after his first conviction, and that the Florida Supreme Court had "review power at least equal to that possessed by this Court [of Appeals] under § 2106," *ibid.,* the court held that a new trial had been a constitutionally permissible remedy.

We granted certiorari, 432 U. S. 905 (1977), to review the judgment of the United States Court of Appeals.

## II

In *Burks* v. *United States, ante,* p. 1, decided today, we have held that the Double Jeopardy Clause precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict. Since the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings, *Benton* v. *Maryland, supra,* we are bound to apply the standard announced in *Burks* to the case now under review.

If we were confronted only with the *per curiam* opinion of the Florida Supreme Court, reversal in this case would follow.

---

and regardless of whether a petitioner moves for a new trial on other grounds in addition to asserting the ground of insufficiency of evidence, it would seem that the double jeopardy clause would preclude giving the prosecution a second chance."

[6] These included *Forman* v. *United States,* 361 U. S. 416 (1960); *Sapir* v. *United States,* 348 U. S. 373 (1955); *Bryan* v. *United States,* 338 U. S. 552 (1950).

The *per curiam* disposition, standing by itself, leaves no room for interpretation by us other than that a majority of the State Supreme Court was "of the view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree . . . ." By using the precise terminology "lacking in establishing beyond a reasonable doubt," the highest court in Florida seems to have clearly said that there was insufficient evidence to permit the jury to convict petitioner at his first trial.[7] The dispositive *per curiam* opinion makes no reference to the trial errors raised on appeal. Viewed in this manner, the reasoning enunciated in *Burks* would obviously compel the conclusion that Greene's second trial violated the Double Jeopardy Clause.

But the situation is confused by the fact that three of the four justices who joined in the *per curiam* disposition expressly qualified their action by "specially concurring" in an opinion which discussed only trial error. One could interpret this action to mean that the three concurring justices were con-

---

[7] Arguably, the *per curiam* opinion might be read as meaning that although there was insufficient evidence to convict the defendants of "murder in the first degree," there was nonetheless evidence to support a conviction for a lesser included offense, *e. g.,* second-degree murder, see Fla. Stat. § 782.04 (1977). At the time of the Florida Supreme Court's holding in this case, the Double Jeopardy Clause was not applicable to state proceedings, and hence that court conceivably did not see any need to consider whether, under the Federal Constitution, a retrial would be allowed *only* for some lesser included offense. Cf. *Green* v. *United States,* 355 U. S. 184 (1957). Indeed, even if *Benton* v. *Maryland,* 395 U. S. 784 (1969), had been decided prior to the State Supreme Court's action, the Florida court might have reasonably concluded from our decisions that a retrial for first-degree murder was permissible under the Double Jeopardy Clause. See *Burks, ante,* at 10. Given our decision today to remand this case for reconsideration by the Court of Appeals, we need not reach the question of whether the State could, consistent with the Double Jeopardy Clause, try Greene for a lesser included offense in the event that his first-degree murder conviction is voided.

cerned simply with trial error and joined in the remand solely to afford Greene and Sosa a fair, error-free trial—even though they were satisfied that the evidence was sufficient to support the verdict. A reversal grounded on such a holding, of course, would not prevent a retrial.[8] See *Burks, ante,* at 15–16; *United States* v. *Tateo,* 377 U. S. 463, 465 (1964). The problem with this interpretation is that the opinion concludes by expressly stating that the three concurring justices had "agreed to the Per Curiam order . . . ." When the concurrence is considered in light of the language of the *per curiam* opinion, it could reasonably be said that the concurring justices thought that the *legally competent* evidence adduced at the first trial was insufficient to prove guilt. That is, they were of the opinion that once the inadmissible hearsay evidence was discounted, there was insufficient evidence to permit the jury to convict.[9]

Given the varying interpretations[10] that can be placed on the actions of the several Florida appellate courts, we conclude that this case should be remanded to the Court of Appeals for reconsideration in light of this opinion and *Burks* v. *United*

---

[8] Even if this view of the concurrence is accepted, it would still mean that only a plurality of the Florida Supreme Court embraced the conclusion that reversal was justified solely on trial-error grounds. We leave resolution of this ambiguity to the Court of Appeals on remand, which will undoubtedly be in a better position to understand how Florida law would construe such a disposition.

[9] We express no opinion as to the double jeopardy implications of a retrial following such a holding.

[10] We note that the Second District Court of Appeal attached still another interpretation to the Florida Supreme Court's action, namely, that a new trial was being granted "in the interests of justice," even though the evidence was technically sufficient to support a verdict of guilty. See *supra,* at 22 n. 2. We are unaware, however, of the amount of weight that Florida law would afford to a district court of appeal's interpretation of its Supreme Court's actions. Nor are we willing to express an opinion as to the double jeopardy implications of a retrial ordered on such grounds. We leave both of these considerations to the Court of Appeals on remand.

*States, ante,* p. 1. The Court of Appeals will be free to direct further proceedings in the District Court or to certify unresolved questions of state law to the Florida Supreme Court. See Fla. Stat. § 25.031 (1977), Fla. App. Rule 4.61; *Lehman Bros.* v. *Schein,* 416 U. S. 386 (1974).

*Reversed and remanded.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE POWELL, concurring.

I concur in the opinion of the Court except insofar as it states that the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings. See *Crist* v. *Bretz, post,* p. 40 (POWELL, J., dissenting). I believe, however, that under our decision today in *Burks* v. *United States, ante,* p. 1, a fundamental component of the prohibition against double jeopardy is the right not to be retried once an appellate court has found the evidence insufficient as a matter of law to support the jury's guilty verdict.

MR. JUSTICE REHNQUIST, concurring in the judgment.

For the reasons stated by MR. JUSTICE POWELL in his dissenting opinion in *Crist* v. *Bretz, post,* p. 40, I do not agree with the Court's premise, *ante,* at 24, that "the constitutional prohibition against double jeopardy is fully applicable to state criminal proceedings." Even if I did agree with that view, I would want to emphasize more than the Court does in its opinion the varying practices with respect to motions for new trial and other challenges to the sufficiency of the evidence both at the trial level and on appeal in the 50 different States in the Union. Thus, to the extent that Florida practice in this regard differs from practice in the federal system, the impact of the Double Jeopardy Clause may likewise differ with respect to a particular proceeding. I therefore concur only in the Court's judgment.