Richard Cesario AVINA, Appellant,

v.

STATE of Texas, State.

No. 2-87-140-CR.

Court of Appeals of Texas,
Fort Worth.

May 26, 1988.

Rehearing Denied June 23, 1988.

Lollar, Phillips & Factor, and Abe Factor, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and David L. Richards, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and FARRIS and LATTIMORE, JJ.

## OPINION

FARRIS, Justice.

Richard Cesario Avina, appellant, was convicted by a jury of burglary of a habitation. *See* TEX.PENAL CODE ANN. sec. 30.02 (Vernon 1974). The jury answered "true" to one enhancement count in the indictment and assessed appellant's punishment at forty years confinement in the Texas Department of Corrections.

Appellant now raises six points of error on appeal. We will discuss only appellant's first point of error regarding the sufficiency of the evidence, because that point alone warrants reversal of the case and a judgment of acquittal.

Since this is a circumstantial evidence case, it is necessary for us to review the facts in detail.

The State's first witness was Officer Mark Bigler of the Everman Police Department. At approximately 2:00 a.m. on August 8, 1986, Bigler was called to the residence of Thurman and Hazel Estep in Everman, Texas to investigate a possible burglary. Investigation of the crime scene revealed a stolen vehicle parked across the street from the Esteps' residence. The garage door to the residence was found open. In the backyard, Bigler found a purse belonging to Hazel Estep and a picnic bench pushed up against the back fence, with the top rail of the wooden fence being broken. On cross-examination, Bigler admitted that no attempts were made to lift fingerprints from a disturbed coffee can, the purse, or the glass door leading into the back yard.

Everman police officer Guy Wagner testified that he, too, was called to the Estep residence in the early morning hours of August 8, 1986. He testified that he and another officer, Mike Hanson, apprehended appellant approximately three blocks from the Estep residence. At the time they arrested appellant, he was standing in a waist-high hedge beside another residence.

Stanley Wilson, at that time an Everman police officer, also answered the call to investigate a possible burglary at the Estep residence. Once at the scene, he investigated an Oldsmobile station wagon parked directly across from the Estep residence. In the car he found a woman, Mary Martinez, lying in the front seat and Martinez's two-year-old daughter lying in the rear seat of the vehicle. While he was investigating the vehicle, he observed a figure running down the street at the end of the block and sent Wagner and Hanson off after him. He could not positively identify appellant as the figure he saw running down the street. The vehicle was later identified as one stolen some time previously from former Tarrant County Sheriff Lon Evans.

The State then called Terry Cason, a neighbor of the Esteps. He testified that on the same morning, he saw a car driving slowly down his street after killing its lights, and saw it park across the street from the Estep residence. His concern was heightened by the fact that one of the two garage doors to the Estep residence was open. He identified the vehicle as the Oldsmobile station wagon in which the woman and baby were found. He saw a male figure depart the vehicle and start toward the Estep residence. He notified his father, who called the Everman police.

The State also called Thurman and Hazel Estep. Thurman Estep testified that he received a telephone call from his neighbor, Terry Cason's father, telling him that someone might be in his house. He testified that he found his wife's purse in the back yard and that a picnic bench had been carried from the patio to the wooden back fence on his property. He also testified that the side door to his house opening into the garage was not locked. He further testified that he did not know how the break in the fence occurred. Hazel Estep testified that she had left her purse behind a chair in the den when she went to bed.

Mrs. Estep's testimony was the last testimony presented in the State's case-in-chief. At that point, defense counsel moved for a directed verdict of acquittal, which was denied by the trial court.

The only witness presented by the defense was Mary Elizabeth Martinez, the woman who was found lying in the front seat of the Oldsmobile station wagon. She testified that she was married to appellant,

and that they had been to the movies at the Mansfield Drive-in earlier that same evening. She also testified that the Oldsmobile had been borrowed from a friend named Kimo Lansoa. She testified that as they were driving back home through Everman, she got into an argument with appellant over buying a house and that as a result of the argument, appellant stopped the car and said he would walk home.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia*, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572–73 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson*, 672 S.W.2d at 803.

Even in reviewing the evidence in a light most favorable to the jury verdict, as we are required to do, we find that the circumstantial evidence is insufficient to connect appellant with the burglary of the Esteps' residence. Terry Cason was unable to identify appellant as being the individual who entered the Esteps' residence. Furthermore, the Everman police officer was unable to identify appellant as the person he saw fleeing down the street. There was apparently no effort by the Everman Police Department to obtain any kind of forensic evidence from the crime scene (e.g., fingerprints) that would link appellant to the events occurring inside the Esteps' residence. The only time appellant was positively identified was when he was captured by the Everman police standing waist-deep in a hedge three blocks away.

We find the facts in this case similar to those in *Michalenko v. State*, 658 S.W.2d 760, 762 (Tex.App.—Austin 1983), *aff'd per curiam*, 678 S.W.2d 75, 76 (Tex.Crim.App. 1984). In *Michalenko*, the defendant was also accused of burglary of a habitation. The evidence in that case showed that the defendant was seen within a block of the crime scene shortly before the offense was committed. A neighbor of the victim testified that Michalenko was driving a brown Plymouth and drinking a can of Schlitz beer. Another neighbor across the street saw two men in a brown Plymouth pull up near the victim's residence. The same witness, while being unable to identify the two men, testified that one of them was drinking something out of a can. Subsequent police investigation turned up two recently discarded Schlitz beer cans in the vacant lot next to the victim's residence. When the defendant was arrested at his residence, a brown Plymouth bearing the same license number as the brown Plymouth spotted at the victim's residence was parked in the driveway. As in the instant case, the State argued that these inter-related facts, taken together, indicated a chain of events leading to the only reasonable conclusion: the guilt of the defendant. *See id.* at 761–62.

Based on the facts before it, the *Michalenko* court found that the cumulative effect of the evidence did not exclude every other reasonable hypothesis and was insufficient to sustain the jury's verdict. *See id.* at 764. We reach the same conclusion in this case, mainly because there is no evidence connecting the appellant to the crime. We find that this evidence amounts only to a strong suspicion or mere probability of guilt. As such, it is insufficient to support the jury's determination of guilt. *See id.* at 762. At best, the evidence places appellant in the proximity of the crime but fails to establish any nexus with the actual corpus delicti.

Because we find that a rational trier of fact could not have excluded every reasonable hypothesis except the guilt of the accused, the trial court's judgment is re-

versed and remanded to the trial court with an instruction to enter a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).