PEOPLE v PERRY

Docket No. 62726. Decided September 24, 1979. On application by the
defendant for leave to appeal the Supreme Court, in lieu of
granting leave to appeal, reversed the defendant's conviction
and discharged him.

Milton Perry and a codefendant, Jimmie Folkes, were charged
with first-degree murder. The theory of the prosecution was
that defendant Perry was guilty as an aider and abettor in the
shooting of Charles Moore in an alley behind Kenny's Pool Hall
in Ecorse. Defendant Perry was convicted by a jury in Wayne
Circuit Court, Roland L. Olzark, J., of manslaughter and his
codefendant was convicted of first-degree murder. The Court of
Appeals, Beasley, P.J., and J. H. Gillis and N. J. Kaufman, JJ.,
affirmed in a memorandum opinion (Docket No. 27434). Defen-
dant Perry applies for leave to appeal. *Held:*

1. Defendant Perry argues that the only inculpatory evidence
against him was an earlier assault on the victim in front of the
pool hall. Counsel for the defense objected to the prosecutor's
argument to the jury on the ground that there were no facts in
evidence from which the jury could infer that the defendant
was helping his codefendant bring the victim around to the
alley or that defendant Perry was sitting in the front of the
pool hall waiting for his codefendant to come back and waiting
for his codefendant to shoot the victim. There is no evidence at
all as to what happened to defendant Perry in the minutes
between the time the witness saw him in front of the pool hall
with his codefendant and the victim and then saw the codefend-
ant and the victim in the alley. The pool room is not on the
street corner, but rather is in the middle of the block, so that it
was not merely a matter of the codefendant taking the victim
around the corner of the building to the alley after the assault.

2. There is insufficient evidence to suggest that there was a
preconceived intent to kill the victim when defendant Perry
first went into the pool hall to find the victim. The brief
conversation between defendant Perry and the victim in the
pool hall did not appear to the witness to be an argument.
Neither can it be said that the fact that the defendants were
hitting the victim evidenced such an intent or premeditation.

There was insufficient evidence for the jury to consider the aiding and abetting question. It does not follow, merely because defendant Perry was involved in a misdemeanor against the victim a few minutes earlier, that he had anything to do with the murder. The trial judge should not have allowed the charge against defendant Perry to go the jury.

The defendant's conviction is reversed and he is discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

Milton Perry, *in propria persona.*

PER CURIAM. We have reviewed this record and find insufficient evidence to support the defendant's conviction of manslaughter and, therefore, we reverse.

Milton Perry and Jimmie Folkes were charged with first-degree murder. At trial, the principal evidence against them came from Herbert Oden. He testified that during the early evening hours of November 19, 1974, he was at Kenny's Pool Hall in Ecorse. Also present was Oden's friend Charles Moore. The pool hall was occupied by 40 or 50 other persons. Between 7:30 and 8 p.m., Oden stepped outside the front of the pool hall and observed Folkes drive by and park a short distance down the street. Perry, who was a passenger, got out of the car, approached Oden, and asked if Charles Moore was inside. Oden responded that he was, Perry and Oden entered the pool hall, and Oden pointed Moore out to Perry. Perry and Moore had a conversation, overheard by Oden, in which Perry asked Moore, "Have you got that?" Moore then went out the front door with Perry.

A few minutes later, Oden stepped outside to see

where Moore went, and he observed Perry and Folkes "body punching" Moore against the car. One of the two, he could not tell which, "seemed like one of them had an object in his hand". Oden returned to the pool hall, waited two or three minutes, and then, afraid of getting involved in what was happening out front, attempted to leave by going out the back door of the pool hall. As he stepped out the back door, into an alley, he looked to the left and observed Folkes facing Moore while pointing a gun at him, heard a shot fired, and saw Moore fall to the ground. Folkes then turned and fired a shot at Oden, which narrowly missed him. Oden fled by going through the pool hall and out the front door.

As to Milton Perry's involvement, Oden testified as follows:

"*Q.* Could you see all around to see whether or not there were other people [besides Folkes and the victim in the back of the pool hall] around the area where these two men were standing?

"*A.* Yes.

"*Q.* Now did you see anybody else in the area where those two men were?

"*A.* No.

"*Q.* As a matter of fact after you observed the fight out in the front you didn't see Milton Perry anywhere else at all, did you?

"*A.* No.

"*Q.* At no time did you ever see Milton Perry with a weapon in his hand, did you?

"*A.* No.

"*Q.* You cannot say that you ever saw Milton Perry with a weapon of any kind or of any sort in his hand, can you?

"*A.* Right."

Counsel for Perry moved for a directed verdict

at trial on the ground that the evidence was insufficient to show that Perry aided and abetted Folkes. The trial judge denied the motion. The jury found Perry guilty of manslaughter, while convicting Folkes as charged.

Perry has pursued the issue of the sufficiency of the evidence to the Court of Appeals and to this Court. He argues that the only inculpatory evidence was the earlier assault on the victim. That was the basis of the prosecutor's argument to the jury for conviction.

"Now also you can assume facts of this case and infer, that once they [Folkes and Perry] finished plummeting *[sic]* or beating up the deceased, Mr. Folkes then took him around the side through an alley and took him in the alley and shot him. At that time I assume Mr. Perry was in the car waiting for Mr. Folkes to come back. This is the theory of the case."

Defense counsel objected that there were no facts in evidence from which the jury could infer that Perry helped bring the victim around to the alley or that Perry was sitting in the front waiting for Folkes to come back and waiting for Folkes to shoot the deceased.

We find no evidence at all as to what happened to Perry in the minutes between the time the witness saw him in front with Folkes and the victim and then saw Folkes and the victim in back. We note also that the pool room is not on a corner, but rather is in the middle of the block, so it was not merely a matter of Folkes taking the victim around the corner to the alley.

In his rebuttal argument, the prosecutor further tried to bolster the claim that Perry was an aider and abettor.

"Mr. Perry initially went into the pool hall, an aider

and abettor. And under the laws of the State of Michigan, as an aider and abettor, you are considered a principal. You are as guilty as the principal in a crime. Mr. Perry went in the pool hall and he got the deceased outside with him. He punched him in the stomach. He punched him in the chest. He certainly contemplated, he must have known when they went to the pool hall what might occur to the deceased and that is exactly what did occur to him. He was murdered. He is guilty as an aider and abettor. Maybe he didn't pull the trigger, but he is just as guilty as Mr. Folkes, who did pull the trigger."

We find insufficient evidence to suggest that there was a preconceived intent to kill when Perry went into the pool hall. The brief conversation between Perry and the victim in the pool hall did not appear to the witness to be an argument. Neither can it be said that the fact that Folkes and Perry were hitting the deceased evidenced such an intent or premeditation.

The trial judge thought there was sufficient evidence for the jury to consider the aiding and abetting question. We do not. It does not follow, merely because Perry was involved in a misdemeanor offense against the victim a few minutes earlier, that he had anything to do with the murder. The trial judge should not have allowed the charge against Perry to go to the jury.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the defendant's conviction and order the defendant discharged. *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), and *Greene v Massey,* 437 US 19, 25; 98 S Ct 2151; 57 L Ed 2d 15 (1978).

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.