TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00609-CR

NO. 03-07-00612-CR






Ex parte Joe Samuel Griffith






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT

NOS. D-1-DC-07-904052 & D-1-DC-07-904071
HONORABLE FRED A. MOORE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Joe Samuel Griffith's trial for two counts of burglary ended in a mistrial after the jury
was unable to reach a verdict. Griffith subsequently applied for a writ of habeas corpus seeking to
prevent a retrial on the ground that further prosecution would constitute double jeopardy. See
U.S. Const. amend. V; Tex. Const. art. I, § 14. The trial court denied Griffith's application, and this
appeal followed. In a single issue, Griffith asserts that double-jeopardy protections forbid retrial of
his case after the trial court erroneously denied his motions for an instructed verdict due to the fact
that the State had failed to prove an element of the charged offense. We affirm the order of the trial
court denying habeas corpus relief.


BACKGROUND

 Griffith was indicted for two counts of burglary of a habitation and the case proceeded
to a jury trial. In its case in chief, the State presented evidence that on March 28, 2006, Griffith
broke into the home of his estranged wife, Marie Case, and, once discovered, assaulted Case and her
male companion. (1) The main disputed issue at trial was whether Griffith owned or had a right to
occupy the house, thereby making his entry lawful. See Tex. Penal Code Ann. § 30.02(a)(1)
(West 2003) (person commits offense of burglary if he enters habitation without effective consent
of owner); Ex parte Cavazos, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) ("the gravamen of a
burglary is the entry without the effective consent of the owner and with the requisite mental state"). 
Both sides offered testimony regarding whether the house was owned solely by Ms. Case or whether
Griffith had retained an ownership interest in the house, despite the fact that he had not occupied the
property since Ms. Case initiated divorce proceedings in September of 2005. (2)

 At the close of the State's evidence and again when both sides had rested, Griffith
moved for an instructed verdict on the grounds of legal and factual insufficiency, arguing that the
State had failed to prove beyond a reasonable doubt that Griffith was not an owner of the property. 
The trial court denied his motions, and the jury retired for deliberations. Over two days of
deliberations, during which it submitted four notes to the court and was read an Allen charge, (3) the
jury indicated that it was deadlocked. Griffith moved for a mistrial, which the trial court declared
on August 10, 2007. The case was reindicted, charging the original burglary counts as well as
aggravated assault and attempted murder. Griffith filed an application for writ of habeas corpus to
prevent the State from prosecuting him on the new indictment, arguing that to do so would violate
his right to be free from double jeopardy. After a hearing, the trial court denied his application, and
this appeal followed.


STANDARD OF REVIEW

 In reviewing the trial court's decision to grant or deny habeas corpus relief, we view
the facts "in the light most favorable to the trial judge's ruling and should uphold it absent an abuse
of discretion." Ex parte Wheeler, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We afford the same
amount of deference to the trial court's application of the law to the facts if the resolution of the
ultimate questions turns on an evaluation of credibility and demeanor. See Ex parte Peterson,
117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam). If the resolution of the ultimate
questions turns on an application of legal standards, we review the determination de novo. Id.

 DISCUSSION

 Griffith argues that, because jeopardy had already attached when the jury was
impaneled and sworn in his first trial, see Crist v. Bretz, 437 U.S. 28, 29 (1978), a second trial for
the same offense would place him in double jeopardy. He aptly recognizes that in most situations
where, as here, it is the defendant who requests a mistrial, a second trial does not rise to the level of
double jeopardy. (4) See Oregon v. Kennedy, 456 U.S. 667, 676 (1982) ("A defendant's motion for a
mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or
innocence determined before the first trier of fact.'" (quoting United States v. Scott, 437 U.S. 82, 93
(1978)). He maintains, however, that he is entitled to relief because the State failed to provide "even
a scintilla of evidence" that Griffith was not an owner of the house, and thus to allow further
prosecution would give the State "a second attempt" to prove its case in violation of the double
jeopardy clause. 

 In support of this claim, Griffith cites to cases holding that after an appellate court
reverses a guilty verdict because of insufficient evidence, subsequent retrial for the same
offense is constitutionally barred. See Burks v. United States, 437 U.S. 1 (1978); Greene v. Massey,
437 U.S. 19 (1978); see also Stephens v. State, 806 S.W.2d 812 (Tex. Crim. App. 1990) (holding
double jeopardy clause also bars subsequent retrial of lesser-included offense). He maintains that
these cases stand for the principle that "if there was not sufficient evidence during the first trial for
a jury to render a verdict of guilty, a second trial should be barred" by the double jeopardy clause.

 In Burks, the case principally relied upon by Griffith, the defendant raised an insanity
defense but was found guilty; reversing, the appellate court determined that the state had not
produced sufficient evidence to rebut his claim of insanity, but then remanded the cause to allow the
trial court to hear additional evidence and determine if the government could carry its burden on that
issue. 437 U.S. at 4. Finding that such remand was constitutionally barred, the Supreme Court held
that where a conviction is set aside due to insufficiency of the evidence, rather than for trial error,
the double jeopardy clause specifically "forbids a second trial for the purpose of affording the
prosecution another opportunity to supply evidence which it failed to muster in the first
proceeding." (5) Id. at 9.

 Since Burks and Greene, "it has been established that an appellate reversal on the
basis of insufficient evidence operates as the functional equivalent of an acquittal, and thus
terminates jeopardy. Once jeopardy terminates in an acquittal, the Double Jeopardy Clause protects
against a second prosecution for the 'same' offense." Granger v. State, 850 S.W.2d 513, 525
(Tex. Crim. App. 1993) (citing Brown v. Ohio, 432 U.S. 161 (1977)). Griffith asserts that the
reasoning of Burks and Greene must apply in this case because, in his view, the evidence adduced
at his first trial was legally and factually insufficient. In essence, he asks this Court to weigh the
sufficiency of the evidence that the State produced in the first trial--although there has not yet been
a final determination of guilt by the trier of fact--and hold that the evidence was insufficient as
a matter of law. 

 As a general rule, "even under the guise of double jeopardy, challenges to
the sufficiency of the evidence are not properly reviewed in a habeas corpus proceeding." 
Mitchell v. State, 963 S.W.2d 532, 539 (Tex. App.--Tyler 1996), aff'd 977 S.W.2d 575 (Tex. Crim.
App. 1997); see also Ex parte Grigsby, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004); Ex parte
Coleman, 599 S.W.2d 305, 307 (Tex. Crim. App. 1978); Ex parte Sepulveda, 358 S.W.2d 630, 630
(Tex. Crim. App. 1962); Ex parte Wingfield, 282 S.W.2d 219, 220 (Tex. Crim. App. 1955). 
Because the denial of habeas corpus relief permits an interlocutory appeal, appellate courts are
careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that
should not be put before appellate courts at the pretrial stage. Ex parte Smith, 178 S.W.3d 797, 801
(Tex. Crim. App. 2005). Regardless of whether Griffith's claim is cognizable on habeas corpus,
however, we find that it has been invalidated by decisions from our higher courts. 

 In Richardson v. United States, 468 U.S. 317 (1984), the Supreme Court directly
confronted the argument Griffith advances. Like Griffith, the petitioner in Richardson was tried
before a jury and twice moved for a judgment of acquittal on the ground that the prosecution had not
introduced sufficient evidence to prove his guilt. Id. at 318. His motions were denied, and a mistrial
was declared after the jury was unable to reach a verdict. Id. at 318-19. Citing Burks, the petitioner
argued that he was entitled to interlocutory review of his claim that a second trial was barred by the
double jeopardy clause because the government had failed to introduce legally sufficient evidence
at the first trial. Id. at 320.

 The Richardson court disagreed, emphasizing that its "decision in Burks did not
extend beyond the procedural setting in which it arose" and rejecting petitioner's argument. 
Stressing the procedural dissimilarities between the two cases, the Court explained that Burks "arose
out of an appellate finding of insufficiency of evidence to convict following a jury verdict of guilty,"
while in Richardson's trial, the jury was unable to agree on a verdict, resulting in a mistrial. Id. at
324. This distinction was critical because appellate reversal due to insufficient evidence is
tantamount to an acquittal, see Burks, 437 U.S. at 18, while "a trial court's declaration of a mistrial
following a hung jury is not an event that terminates the original jeopardy to which petitioner was
subjected." Richardson, 468 U.S. at 326. "Where, as here, there has been only a mistrial resulting
from a hung jury, Burks simply does not require that an appellate court rule on the sufficiency of the
evidence because retrial might be barred by the Double Jeopardy Clause." Id. at 323.

 Declaring that Richardson's position was incompatible with its established case law
concerning events that will terminate jeopardy, see Logan v. United States, 144 U.S. 263, 297-98
(1892); United States v. Perez, 22 U.S. 579, 580 (1824), the Court put the matter to rest, stating:


[W]e reaffirm the proposition that a trial court's declaration of a mistrial following
a hung jury is not an event that terminates the original jeopardy to which petitioner
was subjected. The Government, like the defendant, is entitled to resolution of the
case by verdict from the jury, and jeopardy does not terminate when the jury is
discharged because it is unable to agree. Regardless of the sufficiency of the evidence
at petitioner's first trial, he had no valid double jeopardy claim to prevent his retrial.

 


Id. at 326 (emphasis added). (6) 

 The Court then attempted to foreclose such claims from being asserted in
future cases:


It follows logically from our holding today that claims of double jeopardy such as
petitioner's are no longer "colorable" double jeopardy claims which may be appealed
before final judgment. . . . Since no set of facts will support the assertion of a claim
of double jeopardy like petitioner's in the future, there is no possibility that a
defendant's double jeopardy rights will be violated by a new trial . . . .



Richardson, 468 U.S. at 326 n.6.

 We think that Richardson is dispositive of Griffith's issue, and further note the Texas
Court of Criminal Appeals's unqualified adoption of the "core proposition of jeopardy law"
announced in Richardson that "a trial court's declaration of mistrial following a hung jury is not an
event that terminates the original jeopardy to which petitioner was subjected." Ex parte McAfee,
761 S.W.2d 771, 772 (Tex. Crim. App. 1988) (emphases in original). 

 In McAfee, the court set forth that the protections against double jeopardy enshrined
in the Fifth Amendment of the U.S. Constitution and Article I, § 14 of the Texas Constitution


bar the Government and the State, respectively, from subjecting any person for the
same offense to be twice put in jeopardy of life or limb. Thus an accused must suffer
jeopardy before he can suffer double jeopardy. The Double Jeopardy Clauses do not
mean that every time a defendant is put to trial before a competent tribunal he is
entitled to go free if the trial fails to end in a final judgment. Absent a final
judgment, he remains under the initial jeopardy. Therefore, a retrial for the same
offense is not double jeopardy.



Id. at 772-72 (internal citations omitted) (emphases in original).

 It is clear that in this case, where there has been no final judgment, Griffith has not
yet suffered jeopardy such that further prosecution would subject him to double jeopardy. Moreover,
absent a final judgment of conviction, we decline his request to assess the sufficiency of the evidence
from the first trial on the basis that Richardson prevents such review. Griffith, having failed to point
us to any authority mandating that an appellate court has the authority to review the sufficiency of
the evidence raised in a trial that resulted in a hung jury on pretrial writ of habeas corpus, and having
failed to distinguish binding authority holding to the contrary, has not shown error in the trial court's
denial of his application. Accordingly, we overrule his issue and affirm the judgment of
the trial court.


CONCLUSION

 Finding no error in the trial court's denial of Griffith's application for habeas corpus,
we affirm the order.


__________________________________________ Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 16, 2008

Do Not Publish
1. The victims and the investigating officers testified that Griffith broke into the house just
before midnight; he was dressed all in black and was wearing a mask and gloves.
2. During the six-month period in which she had been the sole occupant of the house, all of
Griffith's possessions had been removed from inside the home and Ms. Case had changed the locks. 
Griffith did not have keys to the new locks, nor had he ever entered the house without Ms. Case's
knowledge and express permission.
3. See Allen v. United States, 164 U.S. 492 (1896).
4. Moreover, when the mistrial is based on "manifest necessity," retrial will not be jeopardy-barred. Oregon v. Kennedy, 456 U.S. 667, 672 (1982); State v. Torres, 805 S.W.2d 418, 422
(Tex. Crim. App. 1991). The Supreme Court has long held that a mistrial resulting from a hung jury
falls within the "manifest necessity" exception to the prohibition against double jeopardy. 
Logan v. United States, 144 U.S. 263, 297-98 (1892); United States v. Perez, 22 U.S. 579, 580
(1824). As a matter of policy, this exception is intended to permit the State to complete a
prosecution against an alleged violator where "unforeseeable circumstances that arise during a trial
[make] its completion impossible, such as the failure of a jury to agree on a verdict." 
Richardson v. United States, 468 U.S. 317, 324 (1984) (quoting Wade v. Hunter, 336 U.S. 684,
688-89 (1949)).
5. Greene, decided the same day, applied the standard announced in Burks and held that a
per curiam opinion of the state supreme court deciding that the evidence from the first trial was
legally insufficient "compelled the conclusion that Greene's second trial violated the
Double Jeopardy Clause." Greene v. Massey,  437 U.S. 19, 25 (1978).
6. In his reply brief, Griffith attempts to distinguish Richardson by alleging that his challenges
went to the legal sufficiency of the evidence, while Richardson dealt only with the petitioner's
claims of factual sufficiency. Griffith's characterization of Richardson is erroneous in this regard,
since the petitioner had in fact sought "interlocutory review of his claim that a second trial is barred
by the Double Jeopardy Clause because the Government failed to introduce legally sufficient
evidence to go to the jury at the first trial." Richardson, 468 U.S. at 320 (second emphasis added).